Not for Publication

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| J & J SPORTS PRODUCTIONS, INC., *Plaintiff*, v. TIBIRI-TABARA, LLC d/b/a KUCARAMAKARA LOUNGE & BAR and CARLOS A. RANGEL, *Defendants*. | Civil Action No. 18-cv-8819 **OPINION** |

**John Michael Vazquez, U.S.D.J.**

This matter comes before the Court on the unopposed motion of Plaintiff J & J Sports Productions, Inc. ("J & J Sports" or "Plaintiff") for default judgment against Defendants Carlos Rangel and Tibiri-Tabara, LLC d/b/a Kucaramakara Lounge & Bar (individually "Tibiri-Tabara" and collectively "Defendants") under Fed. R. Civ. P. 55(b). The Court reviewed all submissions made in support of the motion and considered the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons that follow, Plaintiff's motion is **GRANTED in part** and **DENIED in part**.

I.  **FACTS AND PROCEDURAL HISTORY**

Plaintiff J & J Sports is a closed-circuit distributor of sports and entertainment programming. Here, Plaintiff was the distributor of the television broadcast of the boxing match "Saul Alvarez v. Amir Khan WBC World Middleweight Championship Fight Program" ("the Program"), which took place on May 7, 2016. Compl. ¶¶ 3, 20, D.E. 1. Plaintiff obtained exclusive commercial distribution rights to the Program pursuant to a contract. *Id.* Plaintiff then entered

into sublicense agreements with commercial establishments that granted the establishments limited rights to publicly show the Program in the respective establishment. *Id.* ¶ 21. Plaintiff alleges that on May 7, 2016, Rangel directed Tibiri-Tabari employees to unlawfully intercept and broadcast the Program at Kucaramakara Lounge & Bar ("Kucaramakara") in Elizabeth, NJ. *Id.* ¶¶ 6-7, 13-16. Rangel is the owner and/or operator of Kucaramakara and a member, officer, or director of Tibiri-Tabara. *Id.* ¶¶ 7-8. Plaintiff contends that the unlawful broadcast of the Program increased profits for Tibiri-Tabara. *Id.* ¶ 17.

Plaintiff filed its six-count complaint on May 4, 2018, alleging among other things, that Defendants knowingly and willfully violated the Communications Act of 1934 (the "Communications Act"), 47 U.S.C. §§ 605, 553. *Id.* ¶ 1. In Count One, Plaintiff alleges that in violation of § 605, Defendants unlawfully intercepted Plaintiff's signal via satellite transmission and broadcasted the event to patrons on May 7, 2016. *Id.* ¶¶ 19-28. Alternatively, Plaintiff contends in Count Two that Defendants unlawfully intercepted the signal via a cable system in violation of § 553. *Id.* ¶¶ 29-34. In Count Three, Plaintiff alleges Common Law Conversion on the grounds that Defendants tortiously obtained the Program and wrongfully converted it, depriving Plaintiff of its economic benefit. *Id.* ¶¶ 35-38. In Count Four, Plaintiff alleges Unlawful Interference with Prospective Economic Advantage for Defendants' wrongful interference with Plaintiff's expectancy of economic advantage from the Program. *Id.* ¶¶ 39-44. Plaintiff contends in Count Five that Defendants' unlawful interception and broadcasting interfered with Plaintiff's contract, amounting to Unlawful Interference with Contractual Relations. *Id.* ¶¶ 45-50. Lastly, in Count Six, Plaintiff alleges that Defendants were unjustly enriched by receiving the benefits of broadcasting the Program without paying the required commercial fee. *Id.* ¶¶ 51-54.

## II. STANDARD OF REVIEW

Rule 55 allows for the entry of default against a party that fails to plead or otherwise defend claims asserted against it. Fed. R. Civ. P. 55. "The entry of a default judgment is largely a matter of judicial discretion, although the Third Circuit has emphasized that such 'discretion is not without limits, . . . and [has] repeatedly state[d] [its] preference that cases be disposed of on the merits whenever practicable.'" *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 535 (D.N.J. 2008) (quoting *Hritz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d Cir.1984)).

Prior to entering a default judgment pursuant to Rule 55(b), a court must: "(1) determine it has jurisdiction both over the subject matter and parties; (2) determine whether defendants have been properly served; (3) analyze the [c]omplaint to determine whether it sufficiently pleads a cause of action; and (4) determine whether the plaintiff has proved damages." *Moroccanoil, Inc. v. JMG Freight Grp. LLC*, No. 14-5608, 2015 WL 6673839, at *1 (D.N.J. Oct. 30, 2015). Courts in this Circuit also consider three factors: "(1) whether there is prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Torres v. Innovate Logistics, LLC*, No. 15-05770, 2017 WL 2727085, at *3 (D.N.J. June 13, 2017); *see also Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club, Inc.*, 175 F. App'x 519, 522 (3d Cir. 2006). In addition, "the factual allegations in a complaint, other than those as to damages, are treated as conceded by the defendant for purposes of a default judgment." *DIRECTV, Inc. v. Pepe*, 431 F.3d 162, 165 (3d Cir. 2005).

## III. DISCUSSION

### a. Jurisdiction and Service

"Before entering a default judgment as to a party 'that has not filed responsive pleadings, the district court has an affirmative duty to look into its jurisdiction both over the subject matter

and the parties.'" *HICA Educ. Loan Corp. v. Surikov*, No. 14-1045, 2015 WL 273656, at *2 (D.N.J. Jan. 22, 2015) (quoting *Ramada Worldwide, Inc. v. Benton Harbor Hari Ohm, L.L.C.*, No. 08-3452, 2008 WL 2967067, at *9 (D.N.J. July 31, 2008)).

The Court has personal jurisdiction over Defendants because they are physically located in New Jersey and were served within the state pursuant to Rule 4.[1] Fed. R. Civ. P. 4(k)(1)(A); Certification of Michael J. Peters, Esq. ("Peters Cert."), Ex. B, D.E. 13-2. It also appears that the principal place of business of Tibiri-Tabara, LLC, is in New Jersey. The Court also has subject matter jurisdiction over this matter. Plaintiff asserts claims pursuant to 47 U.S.C. §§ 553(a) and 605(a), which both provide a private right of action for an aggrieved party. *See* 47 U.S.C. § 553(c), § 605(e). The Court, therefore, has federal question subject matter jurisdiction over Plaintiff's claims. *See* 28 U.S.C. § 1331.

### b. Sufficiency of Plaintiff's Causes of Action

Next, the Court must determine whether the Complaint states a proper cause of action. In deciding a motion for default judgment, a court must accept all well-pleaded factual allegations in the pleadings as true. A court, however, need not accept the moving party's legal conclusions or factual allegations as to damages. *Chanel, Inc.*, 558 F. Supp. 2d at 535-36.

---

[1] Plaintiff's return of service indicates that Tibiri-Tabara was served via "Jane Doe," a "person authorized to accept service." D.E. 10. Plaintiff's exhibits in support of this motion, however, demonstrate that Rangel is the only agent for service of process for Tibiri-Tabara. Peters Cert., Ex. B., D.E. 13-2. Therefore, the Court rejects Plaintiff's contention that Jane Doe was a person authorized to accept service for Tibiri-Tabara. *See Granger v. Am. e-Title Corp.*, No. 10-4627, 2013 WL 1845338, at *7 (D.N.J. Apr. 10, 2013) (finding ineffective service of process on a corporation where plaintiff left the summons and complaint with the registered agent's alleged roommate, Jane Doe). But as the registered agent and an officer of Tibiri-Tabara, the personal service of Rangel (D.E. 9) also constitutes services as to Tibiri-Tabara. *See* Fed. R. Civ. P. 4(h)(1)(B).

### i. Sections 605 and 553

To state a claim under § 605 or § 553, a plaintiff must establish that defendants "(1) intercepted a broadcast; (2) were not authorized to intercept the broadcast; and (3) showed the broadcast to others." *J & J Sports Prods., Inc. v. Edrington*, No. 10-3789, 2012 WL 525970, at *2 (D.N.J. Feb. 16, 2012). Plaintiff pleads that it had the exclusive right to distribute the Program, it entered into sublicense agreements with various establishments in New Jersey permitting the establishments to broadcast the Program to patrons, and it did not enter into such a sublicense agreement with Defendants. Compl. ¶¶ 20-23. The allegations establish that Defendants were not authorized to intercept the broadcast. *See Joe Hand Promotions, Inc. v. Waldron*, No. 11-849, 2013 WL 1007398, at *3 (D.N.J. March 13, 2013). Moreover, Plaintiff alleges that Rangel directed his employees to broadcast the Program at Kucaramakara and that doing so increased profits for Kucaramakara. Compl. ¶ 17. Thus, the Court can reasonably infer that Tibiri-Tabara showed the broadcast to others. Moreover, on May 7, 2016, Plaintiff's private investigator observed the Program on three television screens in Kucaramakara and saw twenty-eight patrons at the bar. Plaintiff's Aff. Ex. B, D.E. 13-1. Accordingly, Plaintiff pleads the required elements for liability under § 605 and 553 as to Tibiri-Tabara.[2]

Plaintiff also seeks to hold Rangel individually liable. Compl. ¶¶ 7-18. To do so, Plaintiff must demonstrate that Rangel

> (1) has the right and ability to supervise the violative activity, although he need not be supervising, because he need not know of the violative activity, and (2) has a direct financial interest in the violation, i.e. financial benefits,

---

[2] Plaintiff also asserts claims of common law conversion, unjust enrichment, unlawful interference with prospective economic advantage, and unlawful interference with contractual obligations. Compl. ¶¶ 35-54. All of Plaintiff's claims pertain to a single situation -- Defendants' unlawful interception of the Program on May 7, 2016. Thus, Counts Three through Six appear to be alternate theories of recovery. Because the Court concludes that Plaintiff prevails as to its claims under the Communications Act, the Court will not address Plaintiff's alternate claims.

even if not proportional or precisely calculable, that directly flow from the violative activity."

*J & J Sports Prods., Inc. v. Ramsey*, 757 F. App'x 93, 95 (3d Cir. 2018) (quoting *Joe Hand Promotions, Inc. v. Yakubets*, 3 F. Supp. 3d 261, 296 (E.D. Pa. 2014)).

Here, Plaintiff is the sole member of Tibiri-Tabara. Peters Cert. Exs. B, C. But a person does not have a financial interest "simply because the individual defendant is president and/or a shareholder of the codefendant corporation." *J & J Sports Prods., Inc. v. Cruz*, No. 14-2496, 2015 WL 2376290, at *4 (E.D. Pa. May 18, 2015) (citing *Yakubets*, 3 F. Supp. 3d at 295-96). In addition, although Plaintiff alleges that Rangel had a direct financial interest in the activities at Kucaramakara and that broadcasting the Program resulted in increased profits, these allegations are pled upon information and belief.[3] Compl. ¶¶ 14-17. As for Rangel's ability to supervise the wrongful conduct, Plaintiff does not allege that Rangel was present at Kucaramakara on May 7, 2016. Plaintiff does, however, contend that Rangel had the ability to supervise employees and activities at Kucaramakara and directed employees to intercept the Program. Compl. ¶¶ 11-13. Again, these allegations are made upon information and belief. Thus, Plaintiff fails to provide sufficient factual information upon which the Court could conclude that either of the necessary elements to impose personal liability is satisfied. Because the entry of default judgment is discretionary, the Court exercises its discretion and declines to enter default judgment as to Rangel individually due to the insufficient factual allegations as to Rangel's personal involvement.

---

[3] Although Plaintiff's investigator observed 28 patrons at the Kucaramakara on May 7, 2016, Plaintiff fails to allege that these patrons specifically went to the bar because they knew the Program was going to be shown, that there was an increase in business on the night at issue because of the Program, or any other facts that could demonstrate that the Kucaramakara financially benefited from the illegal broadcast.

### c. **Default Judgment Factors**

Prior to imposing default judgment, district courts must also make explicit factual findings as to "(1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default." *Moroccanoil, Inc.*, 2015 WL 6673839, at *1. Here, all three factors support entering default judgment. First, where, as here, a defendant has not responded and the record does not support any defenses, "courts cannot say whether a meritorious defense exists and are permitted to presume that none exists." *Gov't Emps. Ins. Co. v. Hamilton Health Care Ctr. P.C.*, No. 17-0674, 2018 WL 1226105, at *6 (D.N.J. Mar. 9, 2018). Second, Plaintiff has no alternative means of relief for the harm allegedly caused by Tibiri-Tabara. Therefore, Plaintiff will be prejudiced if default judgment is not entered. *See Joe Hand Promotions, Inc. v. Singleton*, No. 17-13687, 2018 WL 3054683, at *4 (D.N.J. June 20, 2018). Finally, Tibiri-Tabara's failure to respond permits the Court to draw an inference of culpability on its part. *Waldron*, 2013 WL 1007398, at *4. As a result, the Court finds that default judgment is warranted as to Tibiri-Tabara.

### d. **Proof of Damages**

While the factual allegations of the complaint "will be taken as true," the amount of damages must still be proven. *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990). "If the damages are not for a sum certain or for a sum which can by computation be made certain, the court may conduct such hearings or order such references as it deems necessary and proper." *Id.* (citing Fed. R. Civ. P. 55(b)(2)) (internal quotation marks omitted). Where a plaintiff seeks statutory damages, costs, and attorney's fees, a court may award damages without a hearing. *Waldron*, 2013 WL 1007398, at *4.

### i. Statutory Damages

A plaintiff asserting a cause of action under the Communications Act may recover under either 47 U.S.C. § 553 or § 605, but not both.[4] *TKR Cable Co. v. Cable City Corp.*, 267 F.3d 196 (3d Cir. 2001). Plaintiff does not plead how Defendants intercepted the signal in this instance. As a result, it is not clear whether § 553 or § 605 is applicable. But where a defendant fails to respond to Plaintiff at all, "courts in this district have found it proper to award statutory damages under either statute." *Waldron*, 2013 WL 1007398, at *1 n.2. In this instance, Plaintiff argues that damages should be awarded pursuant to § 605. Pltf. Mem. at 10, D.E. 13-3. Accordingly, the Court will address Plaintiff's proof of damages pursuant to § 605.

§ 605(e)(3)(C) provides that an aggrieved party may receive actual damages or statutory damages for an amount between $1,000 to $10,000 per violation, which "the court considers just." 47 U.S.C. § 605(e)(3)(C)(i). A plaintiff may receive enhanced damages under § 605 by showing that "the interception of the broadcast was willful and for commercial advantage or private gain." *Edrington*, 2012 WL 525970, at *3. If enhanced damages are available, a court may increase the award by up to $100,000 for each violation. 47 U.S.C. § 605(e)(3)(C)(ii). A court shall also award attorney's fees and costs to a prevailing aggrieved party. 47 U.S.C. § 605(e)(3)(B)(iii).

In determining statutory damages, recent cases within this district have concluded that an award of statutory damages pursuant to § 605 should approximate actual damages. *See Premium Sports, Inc. v. Pereira*, No. 14-6240, 2015 WL 5770517, at *2 (D.N.J. Sept. 30, 2015); *J & J Sports Prods., Inc. v. Gallegos*, No. 08-201, 2008 WL 3193157, at *4 (D.N.J. Aug. 5, 2008) (awarding

---

[4] § 553 prohibits illegal interception via a wired cable system while § 605 prohibits illegal interception via radio communications, which includes satellite transmissions. 47 U.S.C. §§ 605(a), 553. While the method of interception differs, "the two statutes share a nearly identical remedial scheme." *Waldron*, 2013 WL 1007398, at *1 n.2.

8

$1,500 in statutory damages based on an estimate of what it would have cost defendant to legally exhibit the program); *J & J Sports Prods., Inc. v. Perdomo*, No. 06-1374, 2007 WL 923522, at *4 (D.N.J. Mar. 26, 2007) (awarding $1,200 in statutory damages for the cost defendant would have paid to legally exhibit the boxing match); *Waldron*, WL 1007398, at *26 (reasoning that when both statutory and enhanced damages are appropriate, the court may award statutory damages for actual injuries suffered, and enhanced damages to reflect specific and general deterrence). When there is a wide discrepancy between maximum statutory damages and actual damages, courts generally decline to award the maximum as to not overcompensate the plaintiff. *Edrington*, 2012 WL 525970, at *3; *Gallegos*, 2008 WL 3193157, at *4; *J & J Sports Prods., Inc. v. Munguti*, No. 06-1282, 2007 WL 928479, at *3 (D.N.J. Mar. 27, 2007) (declining to award the maximum statutory damages as to not "significantly overcompensate Plaintiff").

Plaintiff urges the Court not to follow this approach, arguing that it conflates actual and statutory damages, and that § 605 would not have these separate provisions "if statutory damages were designed merely to be an approximation of actual damages." Pltf. Mem. at 14. Instead, Plaintiff requests an award of treble the sublicensing fee, which would total $6,600. *Id.* at 16. This approach is used by some courts outside of this district. *See, e.g., Kingvision-Pay-Per-View, LTD v. Lardo*, No. 10-cv-0059, 2010 WL 3463316, at *4 (W.D. Pa. Sept. 1, 2010); *Kingvision-Pay-Per-View, LTD v. Gutierrez*, 544 F. Supp. 2d 1179, 1185 (D. Colo. Feb. 12, 2008); *J & J Sports Prods. v. Tonita Rest.*, No. 13-382, 2015 WL 9462975, at *5 n.8 (E.D. Ky. Dec. 28, 2015); *DIRECTV, Inc. v. Cibulka*, No. 11-231, 2011 WL 3273058, at *1 n.4 (M.D. Pa. July 29, 2011). As discussed, a majority of court in this district have concluded that an award of statutory damages should approximate actual damages. In this instance, the Court declines to depart from this approach within the context of a motion for default judgment. Accordingly, the Court will award

Plaintiff $2,200 in statutory damages, which would have been the sublicense fee to broadcast the Program at Kucaramakara. *See* Pltf. Mem. at 2.

Plaintiff also seeks at least $15,000 in enhanced statutory damages, arguing that this amount "serve[s] the dual purposes of compensating Plaintiff and functioning as a deterrent against both these Defendants and others." *Id.* at 10. In assessing the propriety of enhanced damages, courts consider factors such as the following:

> (1) whether the defendant has intercepted unauthorized broadcasts repeatedly and over an extended period of time; (2) whether it reaped substantial profits from the unauthorized exhibition in question; (3) whether the plaintiff suffered significant actual damages; (4) whether the defendant advertised its intent to broadcast the event; and (5) whether the defendant levied a cover charge or significant premiums on its food and drink because of the broadcast.

*Kingvision Pay-Per-View v. Rodriguez*, No. 02-7972, 2003 WL 548891, at *2 (S.D.N.Y. Feb. 25, 2003).

Plaintiff describes several ways that Defendants could have obtained access to the broadcast; each method required Defendants to take affirmative steps to intercept and broadcast the event. Plaintiff's Aff. ¶ 10. This is sufficient to demonstrate willfulness. *See Waldron*, 2013 WL 1007398, at *3 ("The Court credits plaintiff's contention that it would be virtually impossible to receive this encrypted broadcast inadvertently."); *see also Singleton*, 2018 WL 3054683, at *3 ("[S]ignals do not spontaneously descramble. Intentional actions are required to intercept a closed-circuit broadcast.") (internal citations omitted). Consequently, Plaintiff establishes that the interception was willful. Plaintiff, however, fails to provide evidence of any of the above-mentioned factors.[5]

---

[5] Pursuant to § 605(e)(3)(C), an aggrieved party may elect to recover either actual or statutory damages. Here, Plaintiff elected to recover statutory damages and therefore does not plead any facts supporting actual damages aside from the $2,200 sublicensing fee. Pltf. Mem. at 10.

Plaintiff instead argues that establishments that illegally intercept similar broadcasts to the Program here tend not to advertise their illegal broadcasting or charge premiums for food or drink, or cover fee during the broadcast. Plaintiff's Aff. ¶¶ 16-18. Moreover, in support of its claim for $15,000 in enhanced damages, Plaintiff relies exclusively on cases from other circuits. Pltf. Mem. at 16-18. But this argument is at odds with the majority of cases in this district, which consider the *Rodriguez* factors in determining the appropriateness of enhanced damages. *See, e.g., Waldron*, 2013 WL 1007398, at *8 (awarding $2,400 in enhanced damages because of lack of evidence that defendants advertised the event, or had a cover charge or premium on food or drink); *Premium Sports, Inc.*, 2015 WL 5770517, at *3 (awarding $1,000 in enhanced damages where plaintiff provided no evidence of advertising, cover charge or premiums). As discussed, this Court will not depart from the clear weight of persuasive authority from the district in deciding a motion for default judgment. And where a plaintiff fails to demonstrate evidence supporting the above-mentioned factors, courts in this district typically award $1,000 in enhanced damages. *See, e.g., Gallegos*, 2008 WL 3193157, at *4 (awarding $1,000 in enhanced damages where plaintiff provided no evidence of frequently applied factors to assess enhanced damages); *Munguti*, 2007 WL 928479, at *3-4 (awarding $800 in enhanced damages where plaintiff provided no evidence of advertising, cover charge, premiums or past violations by defendant). As a result, the Court will also award Plaintiff $1,000 in enhanced statutory damages.

Finally, as the prevailing party, Plaintiff is entitled to recover attorney's fees and costs for this matter. 47 US.C. § 605(e)(3)(B)(iii). Plaintiff does not provide any information as to its attorney's fees and costs, stating that the amount will be determined by separate application. Pursuant to Fed. R. Civ. P. 54(d)(2)(B)(i), the Court grants Plaintiff fourteen (14) days from the entry of this opinion and the accompanying order to submit its motion for fees and costs.

## IV. CONCLUSION

For the reasons set forth above, Plaintiff's motion for default judgment is **GRANTED in part** and **DENIED in part**. Accordingly, the Court will enter judgment against Defendant Tibiri-Tabara, LLC in the amount of $3,200. An appropriate Order accompanies this Opinion.

Dated: July 26, 2019

                                                            _____
                                                            John Michael Vazquez, U.S.D.J.